UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN

DORIS KATHLEEN SINGLETON, Personal
Representative of the ESTATE OF
EDDIE LORENZO SINGLETON,

    Plaintiff,

                                      Case No. 14-172

v.

UNITED STATES OF AMERICA,

    Defendant.

## COMPLAINT

    Plaintiff, Kathleen Singleton, Personal Representative of the Estate of Eddie Lorenzo Singleton, by her attorneys, hereby files her Complaint against the United States of America.  In support thereof, Plaintiff alleges and avers as follows.

## NATURE OF THE ACTION

    1.    The claims herein are brought against the United States of America pursuant to the Federal Tort Claims Act for money damages as compensation for the wrongful death of Eddie Lorenzo Singleton, which were caused by the negligent and wrongful acts and omissions of agents and employees of the United States Government while those agents and employees acted within the scope of their offices and employment, under circumstances where the United States of America, if a private person, would be liable to the Plaintiff in accordance with the laws of the State of Michigan.

## PARTIES

    2.    At all relevant times, Eddie Lorenzo Singleton was a resident of Kalamazoo Township, Kalamazoo County, Michigan.

3.     Doris Kathleen Singleton and Eddie Lorenzo Singleton were married on June 5, 2003, and remained married until Eddie Lorenzo Singleton's death on August 15, 2012.

4.     At all relevant times, Doris Kathleen Singleton resided with her husband, Eddie Lorenzo Singleton, in Kalamazoo Township, Kalamazoo County, Michigan.

5.     On October 10, 2012, the Kalamazoo County Probate Court declared Doris Kathleen Singleton the appointed and qualified personal representative of the Estate of Eddie Lorenzo Singleton, as evidenced by the Letters of Authority for Personal Representative attached hereto at Exhibit A.

6.     Both the United States of America and its Department of Veterans Affairs are appropriate Defendants under the Federal Tort Claims Act as, at all relevant times, the United States acted through its agency, the Department of Veterans Affairs.

## JURISDICTION AND VENUE

7.     This Court's jurisdiction is proper pursuant to the Federal Tort Claims Act.

8.     Plaintiff filed an Administrative Tort Claim with the United States Department of Veterans Affairs on January 29, 2013.

9.     Plaintiff files this Complaint within six months of the agency's denial of Plaintiff's Administrative Tort Claim, and all conditions precedent to the filing of this Complaint under the Federal Tort Claims Act have been satisfied.

10.     Venue is proper in this district because Plaintiff resides in the Western District of Michigan and because acts and/or omissions giving rise to the allegations contained herein occurred in the Western District of Michigan.

## GENERAL ALLEGATIONS

11.     On or about October 15, 2010, Eddie Lorenzo Singleton presented to the United States Department of Veterans Affairs ("VA") Medical Center in Battle Creek, Michigan, complaining of a pimple size lesion on his left buttocks.

12.     At that time, Mr. Singleton was seen and evaluated by Christine E. Anguras, D.O., a health professional licensed and/or authorized to provide health care services in the State of Michigan.

13.     At all relevant times, Christine E. Anguras, D.O. acted within the scope of her employment as an employee and/or agent of the United States Department of Veterans Affairs.

14.     Christine E. Anguras, D.O. diagnosed the lesion as a boil, and ordered the application of compresses.

15.     Christine E. Anguras, D.O. did not order a biopsy and/or pathological examination of the lesion, did not personally perform a biopsy and/or pathological examination of the lesion, nor did she refer Mr. Singleton to a surgeon for biopsy and/or pathological examination of the lesion.

16.     On or about October 22, 2010, the lesion on Mr. Singleton's buttocks had worsened, and Mr. Singleton presented at the VA Medical Center in Battle Creek, Michigan, where he was seen by Ireneo Y. Diaz, Jr., M.D., a health professional licensed and/or authorized to provide health care services in the State of Michigan.

17.     At all relevant times, Ireneo Y. Diaz, Jr., M.D. acted within the scope of his employment as an employee and/or agent of the United States Department of Veterans Affairs.

18.     At the time of Mr. Singleton's presentation on or about October 22, 2010, Ireneo Y. Diaz, Jr., M.D. reassured Mr. Singleton that the lesion was a boil, ordered the continued application of hot compresses, and ordered a course of antibiotics.

19.      Ireneo Y. Diaz, Jr., M.D. did not order a biopsy and/or pathological examination of the lesion, did not personally perform a biopsy and/or pathological examination of the lesion, nor did he refer Mr. Singleton to a surgeon for biopsy and/or pathological examination of the lesion.

20.     On or about November 23, 2010, Eddie Lorenzo Singleton contacted a telephone triage nurse at the VA Medical Center in Battle Creek, Michigan, Nancy Moore, to complain about the lesion.

21.     Christine E. Anguras, D.O. reviewed the nursing note generated as a result of Eddie Lorenzo Singleton's contact with telephone triage nurse Nancy Moore on November 23, 2010.

22.     On or about December 26, 2010, Eddie Lorenzo Singleton contacted a telephone triage nurse at the VA Medical Center in Battle Creek, Michigan, Janice Frazier, to complain of pain radiating down his left leg, inability to stand on his left leg, and a fever-like sensation in his abdominal area.

23.     On or about December 27, 2010, Eddie Lorenzo Singleton presented for a check-up with Dr. Isiriel, at which time Mr. Singleton complained that the lesion showed no sign of improvement.

24.     On or about December 27, 2010, Eddie Lorenzo Singleton also presented for CT imaging of the lesion, at which time Mr. Singleton complained that his blood sugar had not come down since the time the lesion first appeared.

25.     On or about December 27, 2010, Sharon Woodson-Moss, A.P.N., a health professional licensed and/or authorized to provide health care services in the State of Michigan, performed an incision and drainage of Mr. Singleton's lesion at the VA Medical Center in Battle Creek, Michigan.

26.     At all relevant times, Sharon Woodson-Moss, A.P.N. acted within the scope of her employment as an employee and/or agent of the United States Department of Veterans Affairs.

27.     Sharon Woodson-Moss, A.P.N. neither recommended pathological examination of the lesion, nor did she refer Mr. Singleton to a surgeon for biopsy and pathological examination of the lesion.

28.     On or about January 14, 2011, the Wound Care Clinic reported to Sharon Woodson-Moss, A.P.N. that discharge and odor was observed emanating from the lesion, and provided photographs of the lesion, all of which Sharon Woodson-Moss, A.P.N. noted in Mr. Singleton's file.

29.     Physicians at the VA ultimately described the lesion as being the size of a cauliflower, as it had continued to grow over the course of time.

30.     On or about February 11, 2011, after four months of treatment with the VA Medical Center at Battle Creek, Michigan, Mr. Singleton underwent a biopsy of the lesion, which revealed squamous cell carcinoma.

31.     A CT scan performed on February 16, 2011, revealed lymph node involvement and metastasis.

32.     Mr. Singleton subsequently underwent excruciating treatment for the cancer, including excision of the mass, lymph node dissection, chemotherapy, and radiation.

33.     On August 15, 2012, Mr. Singleton died as a result of the squamous cell carcinoma.

## COUNT I: WRONGFUL DEATH

34.     Plaintiff re-alleges and incorporates by reference all of the allegations contained in paragraphs 1-33 above.

35.     The standard of care applicable to general practitioners requires general practitioners to provide the recognized standard of acceptable professional practice in the community in which the defendant practices or in a similar community.   The standard of care applicable to specialists requires specialists to provide the recognized standard of care within that specialty as reasonably applied in light of the facilities available in the community or other facilities reasonably available under the circumstances.

36.     Ireneo Y. Diaz, Jr., M.D. deviated from the applicable standard of care in his treatment of Mr. Singleton by failing to appropriately evaluate and assess the lesion, which resulted in a delayed diagnosis of the squamous cell carcinoma, as set forth in the Affidavit of Merit of David Goldstein, which is attached hereto at Exhibit B.

37.     Ireneo Y. Diaz, Jr., M.D. also deviated from the applicable standard of care in his treatment of Mr. Singleton by failing to order timely biopsy and pathological evaluation of the lesion and/or by failing to timely refer Mr. Singleton to a surgeon for biopsy and pathological evaluation of the lesion, as set forth in the Affidavit of Merit of David Goldstein, which is attached hereto at Exhibit B.

38.     It is well-established in the medical literature that squamous cell carcinoma is easily treated and curable if diagnosed in a timely manner.

39.    The delay caused by the professional negligence of Dr. Diaz caused or contributed to the spread of the cancer, which ultimately caused Mr. Singleton's demise, as set forth in the Affidavits of Merit of David Goldstein, M.D. and Mark Levin, M.D, which are attached hereto at Exhibits B and C, respectively.

40.    Christine E. Anguras, D.O. deviated from the applicable standard of care in her treatment of Mr. Singleton by failing to appropriately evaluate and assess the lesion, which resulted in a delayed diagnosis of the squamous cell carcinoma, as set forth in the Affidavit of Merit of David Goldstein, which is attached hereto at Exhibit B.

41.    Christine E. Anguras, D.O. also deviated from the applicable standard of care in her treatment of Mr. Singleton by failing to order timely biopsy and pathological evaluation of the lesion and/or by failing to timely refer Mr. Singleton to a surgeon for biopsy and pathological evaluation of the lesion, as set forth in the Affidavit of Merit of David Goldstein, which is attached hereto at Exhibit B.

42.    The delay caused by the professional negligence of Christine E. Anguras, D.O. caused or contributed to the spread of the cancer, which ultimately caused Mr. Singleton's demise, as set forth in the Affidavits of Merit of David Goldstein, M.D. and Mark Levin, M.D, which are attached hereto at Exhibits B and C, respectively.

43.    The applicable standard of care applicable to Sharon Woodson-Moss, A.P.N. requires the skill and care ordinarily possessed and exercised by an adult or advanced practice nurse in the same or similar localities.

44.    Sharon A. Woodson-Moss, A.P.N. deviated from the accepted standard of care in her treatment of Mr. Singleton by failing to appropriately evaluate and assess the lesion's

progression, as set forth in the Affidavit of Merit of Neva Solomon, which is attached hereto at Exhibit D.

45.     Sharon A. Woodson-Moss, A.P.N. deviated from the accepted standard of care in her treatment of Mr. Singleton by failing to order or recommend referral to a surgeon for biopsy and pathological evaluation, as set forth in the Affidavit of Merit of Neva Solomon, which is attached hereto at Exhibit D.

46.     The delay caused by the professional negligence of Sharon A. Woodson-Moss, A.P.N. caused or contributed to the spread of the cancer, which ultimately caused Mr. Singleton's demise, as set forth in the Affidavits of Merit of Mark Levin, M.D, which is attached hereto at Exhibit C.

47.     The incision and drainage performed by Sharon A. Woodson-Moss, A.P.N. on December 28, 2010, likely caused and/or accelerated metastatic spreading as set forth in the Affidavit of Merit of Mark Levin, M.D, which is attached hereto at Exhibit C.

48.     When a cancerous lesion is incised in this way, without performing a wide incision to remove the cancer, metastatic cells are allowed to spread by invading the lymphatic and vascular systems.

49.     Had Mr. Singleton's lesion been biopsied in a timely fashion and prior to or near the time of the incision and drainage, the squamous cell carcinoma would have been diagnosed, and treatment would have commenced, prior to metastatic spread.

50.     Because a biopsy was not performed prior to or at the time of incision and drainage, what would likely have been a contained and easily treatable cancer spread and became metastatic, which lead to Mr. Singleton's unfortunate demise.

51.     It is well-established in the medical literature that squamous cell carcinoma is easily treated and curable if diagnosed in a timely manner.

52.     As a direct and proximate result of the professional negligence of Ireneo Y. Diaz, Jr., M.D., Christine E. Anguras, D.O., and Sharon A. Woodson-Moss, A.P.N., Plaintiff incurred medical, hospital, funeral, and burial expenses for which the Estate of Eddie Lorenzo Singleton is liable; Eddie Lorenzo Singleton experienced pain and suffering and loss of enjoyment of life during the period intervening between the time of his injury and death; Plaintiff incurred damages for the loss of Eddie Lorenzo Singleton's financial support and for the loss of Eddie Lorenzo Singleton's society and companionship.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, Kathleen Singleton, Personal Representative of the Estate of Eddie Lorenzo Singleton, asks that a judgment be entered on her behalf against the United States of America for her damages, for all injuries and losses, past, present, and future, and such other relief as may be warranted.

Plaintiff,
Doris Kathleen Singleton,
Personal Representative of the Estate of
Eddie Lorenzo Singleton,
By Her Attorney,

/s/Craig E. Hilborn
Craig Hilborn (P43661)
**Hilborn & Hilborn, P.C**.
999 Haynes Street, Suite 205
Birmingham, MI  48009
248-642-8350 phone
248-642-3016 fax